IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **PROGRESSIVE CASUALTY** § | | |
| **INSURANCE COMPANY AS** § | **CIVIL ACTION NO. _____** | |
| **SUBROGEE OF JAY GRAVER** § | | |
| *Plaintiffs* § | | |
| § | **DISTRICT JUDGE:** | |
| § | _____ | |
| **v.** § | | |
| § | | |
| § | **MAGISTRATE JUDGE:** | |
| **NAUTIQUE BOAT COMPANY, INC.** § | _____ | |
| *Defendant* § | | |

## ORIGINAL COMPLAINT AND REQUEST FOR TRIAL BY JURY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Progressive Casualty Insurance Company as subrogee of Jay Graver, and files this Complaint against Defendant, Nautique Boat Company, Inc., and would respectfully show the Court the following:

### I.   PARTIES

1. Plaintiff, Progressive Casualty Insurance Company ("Progressive") is an insurance company authorized to conduct business in the State of Texas, with its principal place of business located at 6300 Wilson Mills Road, W33, Cleveland, Ohio 44143.

2. Defendant, Nautique Boat Company, Inc. ("Nautique") is a corporation that is incorporated under the laws of the State of Florida.

3. Defendant has its principal place of business in the State of Florida. Defendant may be served with process by serving its registered agent, **Jodie Haven McLean, 14700 Aerospace Pkwy, Orlando, Florida 32832.** *Issuance of summons is requested at this time.*

## II. JURISDICTION AND VENUE

4. Progressive's subrogated claims arose in conjunction with the June 19, 2021 catastrophic failure and sinking of a personal watercraft while in operation on Lake Bridgeport in Wise County, Texas. Jurisdiction of this Court arises under Admiralty Jurisdiction pursuant to 28 U.S.C § 1333, and Rule 9(h) of the Federal Rules of Civil Procedure; diversity jurisdiction under 28 U.S.C. §1332(a)(1); pursuant to federal question jurisdiction under 28 U.S.C. 1331 and 15 U.S.C. 2310(d)(1)(B), commonly known as the Magnusson-Moss Warranty Act; and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

5. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the Northern District of Texas.

## III. FACTS

6. Mr. Jay Graver is an individual resident of the State of Texas ("Graver").

7. On or about April 2019, Graver purchased a new 2019 Nautique G21 Super Air Nautique bearing Hull Identification Number CTC91078K819 (the "Boat").

8. The purchase price of the Boat was in excess of $160,000.00, including options, fees, taxes and finance charges.

9. Nautique manufactured and placed into the stream of commerce the aforementioned Boat, which Graver purchased.

10. At the time of Graver's purchase of the Boat, Nautique made representations as to the Boat's performance and quality and assured Graver that the Boat was free from defects.

11. Specifically, the Boat was purchased with an express warranty by Nautique providing in pertinent part:

> [E]ach new Nautique boat…shall, under normal authorized use, be free of defects in material and workmanship for a period of five (5) years or one thousand (1000) hours….This coverage applies to factory-installed components including boat parts, options, or other components not manufactured by Nautique Boat Company.

12.Upon information and belief, Mr. Graver was an experienced boat owner, and had previously owned other personal watercraft, including other Nautique ski and wakeboarding boats.

13.Upon information and belief, Mr. Graver maintained the Boat in full compliance with the Nautique instructions and maintenance manuals, including but not limited to, with respect to winterization efforts.

14.Upon information and belief, in the winter of 2020/2021, the Boat was fully winterized in accordance with the Nautique instructions and owner's manual.

15.Upon information and belief and in addition to the Nautique instructions, Mr. Graver also maintained bilge heaters in the Boat through the winter to prevent any damage to the Boat or its component parts.

16.In the Spring of 2021, the Boat was de-winterized and operated on various occasions without issue for an aggregate time of approximately 30 hours.

17.On or about June 19, 2021 and within the Nautique warranty period of 5 years or 1,000 hours, the Boat was being operated on Lake Bridgeport in Wise County, Texas.

18.The Boat was being operated pursuant to its intended design as a wake boarding/wake surfing watercraft.

19.Mr. Graver along with family and friends noticed the Boat was sitting lower in the water than usual, and discovered the bilge was filling with water.

20.Within a matter of minutes, water poured into the hull of the Boat resulting in the submersion of the batteries and other electrical components. This inundation of water and submersion of the electrical components rendered the Boat's bilge pumps inoperable.

21. After discovery of the ingress of water, rescue services were contacted, and the passengers were evacuated from the Boat.

22. During the efforts to tow the Boat back to shore, the extensive water ingress overcame the Boat, and the Boat sank to the floor of Lake Bridgeport…roughly 60 ft. below the surface.

23. Upon recovery of the Boat from the lake floor, a survey of the damage and cause of loss was performed. During the survey/investigation, it was discovered the water ingress was due to a fracture in the Boat's muffler that caused the muffler body to fully separate from the fiberglass tube components. This condition allowed for an unmitigated flow of water into the hull and the complete submersion of the Boat.

24. Upon information and belief, the muffler body that failed and is at issue in this litigation was manufactured by Centek Marine and installed in the Boat by Nautique during original manufacture.

25. As a result of the submersion, the Boat was deemed a constructive total loss.

26. Demand was made on Nautique for warranty repair or replacement of the Boat prior to the filing of suit. Nautique wholly refused to honor its warranty and took an unsupported position that the failure was the result of Graver's failure to properly winterize the Boat.

27. Nautique was provided an opportunity to repair the defect in the Boat, however Nautique has neglected, failed, refused, or was otherwise unable to repair the substantial defects and damage to the Boat within a reasonable amount of time.

28. Following this loss, Mr. Graver filed an insurance claim with his insurer, Progressive.

29. Pursuant to the terms of the policy issued to Mr. Graver, Progressive issued payment for the covered damages sustained as a result of this loss.

30. Having made payments to, or on behalf of its insured, Progressive stands in the shoes of Graver and asserts its subrogation rights in this lawsuit.

31. Specifically, Progressive seeks reimbursement for the money it paid to, or on behalf of, Mr. Graver for the damage to the Boat, the recovery salvage of the Boat from Lake Bridgeport, the survey of the Boat, and damaged personal property.

32. The causes of action set out herein are not barred by limitations because the discovery rule applies to Progressive's claims.

33. Specifically, Defendant's wrongful acts were inherently undiscoverable at the time they occurred, and were not discovered until after the sinking on or about June 19, 2021, despite the exercise of reasonable diligence.

34. The defect in the muffler body or assembly substantially impairs the use and value of the Boat and rendered the Boat unseaworthy. These defects resulted in the sinking of the Boat and a constructive total loss.

35. By their nature, Nautique's wrongful acts and the resulting damages can be objectively verified.

36. Upon information and belief, Graver would not have purchased the Boat had he known, prior to the time of purchase, that the muffler would fail to withstand normal operating conditions and intended use as a ski or wakeboarding boat.

37. The defects in the Boat that were not discoverable prior to the purchase by Graver, and render the Boat unmerchantable as a ski or wakeboarding boat as marketed and sold to Graver.

## IV.   CAUSES OF ACTION

*FIRST CAUSE OF ACTION*:
**Breach of Warranty pursuant to Magnuson-Moss Warranty Act, 15 U.S.C. §2302, et seq.**

38.   For its first cause of action against Nautique, Progressive re-pleads, re-states and re-alleges the previous paragraphs above as if set forth fully herein and would show the Court as follows:

39.   Progressive as the subrogee of Graver is a "consumer" as defined in 15 U.S.C. §2301(3).

40.   Nautique is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

41.   The Boat is a "consumer product" as defined in 15 U.S.C. § 2301(6).

42.   Progressive is entitled to bring suit against Nautique for damages and other legal relief for its failure to comply with its written and implied warranties pursuant to 15 U.S. 2310(d)(1).

43.   15 U.S.C. § 2304(a)(1) requires Nautique, as a warrantor, to remedy any defect, malfunction or nonconformance of the Boat within a reasonable time and without charge to the consumer.

44.   Despite prior demand, Nautique has failed to remedy the Boat's defects which lead to its sinking and a constructive total loss of the Boat.

45.   As a result of Nautique's breach of written and implied warranties, and Nautique's failure to remedy the same within a reasonable time and without charge to Plaintiff, Plaintiff has suffered damages in excess of the minimum jurisdictional limits of this Court and the Magnuson-Moss Warranty Act.

*SECOND CAUSE OF ACTION*:
**Breach of Implied Warranty of Merchantability pursuant to Magnuson-Moss Warranty Act, 15 U.S.C. §2302, et seq. and Section 2.314 of the Texas Business and Commerce Code**

46. For its second cause of action against Nautique, Progressive re-pleads, re-states and re-alleges the previous paragraphs above as if set forth fully herein and would show the Court as follows:

47. Nautique is a merchant with respect to the Boat.

48. The Boat was subject to implied warranties of merchantability, as defined in 15 U.S.C. § 2308 and Section 2.314 of the Texas Business and Commerce Code, running from Nautique to Progressive as subrogee of Graver.

49. An implied warranty that the Boat was merchantable arose by operation of law as part of the purchase of the Boat.

50. Nautique breached the implied warranty of merchantability in that the Boat was not in an merchantable condition when Graver purchased it, or any time thereafter, and the Boat is unfit for the ordinary purpose for which the Boat is used.

51. Progressive notified Nautique of the defects in the Boat within a reasonable time after said defects were discovered following the sinking of the Boat.

52. As a result of Nautique's breaches of the implied warranty of merchantability, Progressive as subrogee of Graver has suffered damages in excess of the minimum jurisdictional limits of this Court and the Magnuson-Moss Warranty Act.

### *THIRD CAUSE OF ACTION*:
**Breach of Express Warranty pursuant to Section 2.313 of the Texas Business and Commerce Code**

53. For its third cause of action against Nautique, Progressive re-pleads, re-states and re-alleges the previous paragraphs above as if set forth fully herein and would show the Court as follows:

54. In connection with the sale of the Boat to Graver, Nautique provided Graver with the Nautique Limited Warranty under which Nautique warranted the Boat would be free of defects

in factory installed parts and components not manufactured by Nautique for five (5) years or 1000 hours after the date of delivery.

55. Progressive as subrogee of Graver relied on Nautique's warranties when the Boat was purchased and was a part of the basis of the bargain.

56. Progressive and/or Graver submitted demand for warranty repair or replacement of the Boat following the sinking made the basis of this suit.

57. Nautique failed to comply with the terms of the express warranty provided with the Boat, by failing and/or refusing to repair or replace the Boat under the warranty described herein.

58. Progressive and Graver have given Nautique opportunities to cure said defect, but Nautique has been unable and/or has refused to do so within a reasonable time.

59. As a result of Nautique's nonconformities with its warranties, Progressive cannot reasonably rely on the Boat for the ordinary purpose of safe, seaworthy, comfortable, and efficient transportation and reasonable use as a performance watercraft.

60. Neither Progressive nor Graver could have reasonably discovered said nonconformities with the Boat prior to Graver's acceptance of the Boat.

61. Graver would not have purchased the Boat, or would have paid significantly less for the Boat, had he known, prior to the time of purchase, that the Boat contained a defect in the muffler body that is the cause of the subject loss complained of herein.

62. As a direct and proximate result of the willful failure of Nautique to comply with its obligations under the express warranties, Plaintiff has suffered damages in excess of the minimum jurisdictional limits of this Court.

### Conditions Precedent

63. All conditions precedent have been performed or have occurred.

64. Prior to filing this lawsuit, Progressive presented its claim to Nautique, but Nautique refused to honor its obligations and denied the claim.

## V.  JURY DEMAND

65. Plaintiff hereby requests a trial by jury.

## VI.  DAMAGES

66. As a direct and proximate result of Nautique's conduct, Progressive suffered the following damages:

    a. Property damage to the Boat;

    b. Loss of personal property;

    c. Costs of mitigation and salvage of the Boat following its sinking;

    d. Costs of survey following the constructive total loss; and

    e. Attorney's fees.

67. Progressive's collective damages to date are in excess of $187,000.00.

68. Any limitation on remedies provided by Defendant has failed of its essential purpose.

## PRAYER

For these reasons, Progressive asks for judgment against Nautique for the following:

(1) An order approving revocation of the acceptance of the Boat;

(2) Money damages in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, interest, and costs.

(3) Actual damages for the fair market value of the Boat on the date of the loss;

(4) Costs of mitigation and salvage;

(5) Reasonable attorney's fees;

(6) Prejudgment and post-judgment interest;

(7) Costs of suit; and

(8) All other relief the Court deems appropriate and to which Progressive may show itself to be justly entitled.

                Respectfully submitted,

                DOYEN SEBESTA & POELMA, LLLP

By:   */s/ Randall J. Poelma, Jr.*
      Randall J. Poelma, Jr.
      Texas Bar No. 24047823
      rpoelma@ds-lawyers.com
      16945 Northchase Drive, Suite 1400
      Houston, TX 77060
      713-580-8900 Main
      713-580-8900 Facsimile
      E-service: rjpgroup@ds-lawyers.com
      ATTORNEY FOR PLAINTIFF